1

2

3 Justin E. Murphy, OSB #195532
jmurphy@professionalcredit.com
4 PO Box 87940
Vancouver, WA 98486
5 Tel: (425) 457-7470
Attorney for Plaintiff Ray Klein, Inc.
6

7

8

9

10 UNITED STATES DISTRICT COURT

11 DISTRICT OF OREGON

12 PORTLAND DIVISION

13

14

| | |
|---|---|
| RAY KLEIN, INC.,<br>dba Professional Credit Service,<br><br>             Plaintiff,<br><br>   vs.<br><br>OVIO TECHNOLOGIES, INC.,<br>             Defendant(s). | Case No.<br><br>COMPLAINT FOR BREACH OF<br>CONTRACT, QUANTUM MERUIT<br>AND UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL<br>Claim Value: $100,310.00 |

**This is a communication from a debt collector.**

**This is an attempt to collect a debt. Any information gained will be used for that purpose.**

**Fair Debt Collection Practices Act 15 USCA Sec. 1692, et seq.**

Plaintiff, RAY KLEIN, INC., dba Professional Credit Service, ("PCS"), brings this

Complaint against Defendant OVIO TECHNOLOGIES, INC. ("Ovio"), as assignee of Software

PROFESSIONAL CREDIT SERVICE
PO Box 87940
Vancouver, WA 98686
Tel: (425) 457-7470
Email: jmurphy@professionalcredit.com

Technology Group, Inc., ("STG") for breach of express contract, breach of implied contract, action on account, and quantum meruit based on Ovio's failure to pay approximately $100,310.00 to STG for services rendered.

## PARTIES

1. Plaintiff PCS is an Oregon corporation whose principal place of business is Springfield, Oregon.

2. On information and belief, Defendant Ovio is a Delaware corporation with its principal place of business located at 260 Newport Center Drive, Newport Beach, California 92660. Ovio does business in the District of Oregon.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332 (a) as PCS, on one hand, and Ovio on the other, are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4. Venue in this District is appropriate because Ovio has consented to specific jurisdiction by making the contract at issue with an Oregon corporation.

5. Venue in this District is also appropriate under 28 U.S.C. §1391 (2) because a substantial part of the events or omissions giving rise to the claim occurred in Beaverton, Oregon.

## FACTUAL ALLEGATIONS

6. Beginning in March 2017 and continuing through December 2017, STG worked on a series of consulting and development projects for Ovio. Each project originated out of a proposal for work submitted to Ovio by STG and accepted by Ovio. STG and Ovio agreed that the compensation for the work performed would vary by project, with some project items being paid monetarily at the rate of $100 per hour while other items would be paid through stock incentives. On June 2, 2017, Ovio and STG, entered into a Common Stock Subscription Agreement ("Agreement") whereas Ovio agreed to sell STG shares of Ovio at a purchase

PROFESSIONAL CREDIT SERVICE
PO Box 87940
Vancouver, WA 98686
Tel: (425) 457-7470
Email: jmurphy@professionalcredit.com

1   price equal to $ 0.35140 per share for some of the work performed. *Common Stock*

2   *Subscription Agreement Exhibit "A"*. STG received partial payment for the services

3   rendered and made numerous attempts to collect the outstanding amount through February

4   2018 (see *Invoices Exhibit "B")*, when it became apparent that Ovio was not going to fulfill

5   its end of the bargain, and STG ceased all services and support dedicated to Ovio. STG is

6   owed $71,500 for services rendered at $100 per hour and $28,810 in stock for a total value

7   of $100,310. STG assigned the account for collection of the outstanding balance to PCS in

8   April 2019. Despite collection attempts by PCS, Ovio refuses to pay the outstanding

9   amounts owed.

10

11                              **FIRST CLAIM FOR RELIEF**

12                          (Breach of Contract, express and implied)

13   7.  Plaintiff realleges Paragraphs 1 through 6 and incorporates them herein by this reference.

14   8.  STG assigned the account(s) that are the subject of this claim to Plaintiff for collection.

15   9.  On and/or about the dates of March 14, 2017; May 30, 2017; June 14, 2017; July 27, 2017;

16   September 11, 2017; and December 20, 2017; Defendant entered into a contract for services with

17   Plaintiff PCS's Assignor STG by accepting the proposals submitted by STG.

18   10.  Ovio requested that STG provide the services. STG provided the requested services.

19   11.  STG billed Ovio for the services on mixed invoices- where services rendered for the various

20   projects were billed in one monthly invoice.

21   12.  STG performed services for Ovio in accordance with the terms of its agreements.

22   13.  STG, and subsequently PCS, has demanded payment for all of the services rendered to

23   Ovio, and by the filing of this Complaint hereby demands payment of the unpaid for the unpaid

24   sums. Ovio has failed and refused, and it continues to fail and to refuse to pay for all of those

25   services.

26   14.  Defendant breached said contract(s) by failing to pay for the services.

27   15.  Interest accrues on "[a]ll moneys after they become due" based on ORS 82.010.

28

PROFESSIONAL CREDIT SERVICE
PO Box 87940
Vancouver, WA 98686
Tel: (425) 457-7470
Email: imurphy@professionalcredit.com

16. Plaintiff and Plaintiff's Assignor have performed all conditions precedent on their parts to be performed.

17. More than 20 days before filing this action, Plaintiff demanded in writing that Defendant pay the account balance, but Defendant has not paid in full.

## SECOND CLAIM FOR RELIEF

### (Quantum Meruit)

18. Plaintiff realleges Paragraphs 1 through 6 and incorporates them herein by this reference.

19. STG provided the services Ovio requested and in reliance upon Ovio's promise to compensate STG for that work. The reasonable value of those services, including not only STG's consultants, but also the other personnel it committed to the project, is at least $100,310.00. Accordingly, STG is entitled to the reasonable value of the services STG performed for Ovio for which Ovio has not yet paid.

20. Defendant's failure to pay the amount due and owing deprives Plaintiff's Assignor of the reasonable value of the services provided and rendered.

## THIRD CLAIM FOR RELIEF

### (Unjust Enrichment)

21. Plaintiff re-alleges Paragraphs 1 through 6 and incorporates them herein by this reference.

22. Plaintiff's Assignor provided the requested services to Defendant, based on Defendant's implied promise to pay a reasonable fee for services rendered. Defendant has failed to pay for services.

23. Defendant has been unjustly enriched due to failure to pay for services requested.

24. Although Plaintiff's Assignor demanded payment in full, Defendant has not paid the balance. The principal balance now due and owing to Plaintiff's Assignor is $100,310.00.

## PRAYER FOR RELIEF

PROFESSIONAL CREDIT SERVICE
PO Box 87940
Vancouver, WA 98686
Tel: (425) 457-7470
Email: imurphy@professionalcredit.com

1    **WHEREFORE**, Plaintiff prays for judgment against Defendant:

2        1.    entry of judgment in favor of PCS against Ovio on all claims of relief;

3        2.    an order of restitution in the amount equal to the reanable value of ther services

4            STG provided Ovio at Ovio's request, and for which PCS has not been paid;

5        3.    an order awarding PCS damages it has sustained as a result of Ovio's breach in

6            the amount according to proof;

7        4.    Under all its claims for relief in the principal sum of $100,310.00;

8        5.    Pre-judgment interest;

9        6.    Post-judgment interest at the rate of 9% per annum;

10       7.    Reasonable costs associated with this action;

11       8.    Such other relief as the Court deems appropriate.

12

13                         **DEMAND FOR A JURY TRIAL**

14   PCS demands a jury trial for all issues so triable.

15

16

17   Dated this 23rd day of December, 2019.

18

19                                     Respectfully submitted,

20

21                                     /s/ Justin Murphy

22                                     Justin E. Murphy, OSB #195532

23                                     jmurphy@professionalcredit.com

24                                     PO Box 87940

                                  Vancouver, WA 98486

25                                     Tel: (425) 457-7470

26                                     Attorney for Plaintiff

27

28

PROFESSIONAL CREDIT SERVICE
PO Box 87940
Vancouver, WA 98686
Tel: (425) 457-7470
Email: jmurphy@professionalcredit.com

EXHIBIT A

## COMMON STOCK SUBSCRIPTION AGREEMENT

This COMMON STOCK SUBSCRIPTION AGREEMENT (this "**Agreement**") is made and entered into as of the date set forth on the signature page below, by and between OVIO TECHNOLOGIES, INC. a Delaware corporation (the "**Company**"), and the subscriber named on the signature page below (the "**Subscriber**").

### PRELIMINARY STATEMENT

WHEREAS, Subscriber desires to subscribe for and purchase from the Company, and the Company desires to sell to the Subscriber, that number of shares of the Company's Common Stock, par value $0.001 per share (the "**Common Stock**"), as set forth below.

### STATEMENT OF AGREEMENT

NOW, THEREFORE, for good, valuable and binding consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

1.    Subscription for Shares. The Subscriber hereby subscribes for and purchases from the Company that number of shares of Common Stock set forth on the signature page below (the "**Shares**") at a purchase price equal to $0.35140_____ per share, for an aggregate purchase price of as set forth on the signature page below.

2.    Terms of Purchase. The Subscriber shall deliver a check for the Shares payable to the Company, along with an executed copy of this Agreement. Such amount shall be held by the Company and will be returned without interest if this Agreement is not accepted by the Company (or returned pro rata if only a portion of the subscription is rejected by the Company). The Company reserves the right, in its sole discretion, to reject in whole or in part this subscription. Upon acceptance of this Agreement by the Company, the Company will, promptly following the closing of the transaction contemplated hereunder (the "**Closing**") issue a stock certificate representing the Shares in the name of the Subscriber.

3.    Representations and Warranties of Subscriber. Subscriber hereby represents and warrants to the Company as follows:

3.1.    *(Initial where appropriate in the space provided)*

(_____) Subscriber, if an individual, is a resident in the State of _____;

(✓) Subscriber, if an entity, is organized in the State of _Oregon____;

(_____) Subscriber is not a resident of the United States of America, and is a resident of _____ (name of country);

(_____) Subscriber is an entity and is not organized pursuant to the laws of the United States or any jurisdiction thereunder, and is organized under the laws of _____.

3.2.    Subscriber is acquiring the Shares for his, her or its own account, not as a nominee or agent, for investment only, and not with a view to, or for sale in connection with, any distribution thereof within the meaning of the applicable provisions of the Securities Act of 1933, as amended (the "**Act**"), or any applicable state securities laws. Subscriber has no present intention of selling, granting any participation in, or otherwise distributing the Shares. Subscriber understands that the Shares have not been registered by the Company under the Act or qualified with any state securities commission or other regulatory authority, and are being sold to Subscriber in reliance upon the private offering exemption contained in Section 4(2) of the Act or Regulation D thereunder and applicable state law exemptions, and that such reliance is based in part upon these representations. Subscriber understands that the Shares must be held indefinitely unless they are subsequently registered and qualified (which the Company is not obligated to do and has no present intention of doing) or an exemption from registration or qualification is available under the Act and any applicable state securities laws. By executing this Agreement, Subscriber further represents that Subscriber does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations, to such person or to any third person, with respect to any part of the Shares.

3.3.    Subscriber has decided to subscribe for the Shares based solely on Subscriber's independent investigation and evaluation of planned operations of the Company and Subscriber has not relied on any written material or oral representations.

3.4.    Subscriber and his, her or its attorneys and/or advisors have been provided an opportunity to obtain information concerning the Company and have been given an opportunity to ask questions of and receive answers from, authorized representatives of the Company concerning the Company, the offering and sale of the Shares and any other relevant matters pertaining to this investment, and, in all instances have been afforded the opportunity to obtain such additional information as necessary to verify the accuracy of the information that was otherwise provided.

3.5.    Subscriber is aware that an investment in the Shares is highly speculative and Subscriber could lose his, her or its entire investment and Subscriber's financial condition is such that Subscriber is able to bear the economic risks of investment in the Shares, including the risk of loss of Subscriber's entire investment in the Shares should the securities become worthless, taking into consideration the limitations on resale of the Shares.

3.6.    Subscriber has a preexisting personal or business relationship with the Company, or by reason of his, her or its business or financial experience, or by reason of the business or financial experience of his, her or its financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any affiliate or selling agent of the Company, Subscriber is capable of evaluating the risks and merits of an investment in the Shares and of protecting his, her or its own interests in connection with this investment.

3.7.    Subscriber is an "Accredited Investor", as that term is defined under Rule 501 of Regulation D promulgated under Section 4(2) of the Act.

3.8.    Subscriber represents that Subscriber neither is nor will be obligated for any finders' fee or commission in connection with this transaction. Subscriber agrees to indemnify and

to hold harmless the Company from any liability for any commission or compensation in the nature of a finders' fee (and the costs and expenses of defending against such liability or asserted liability) for which Subscriber or any of its officers, partners, employees, or representatives is responsible.

3.9.    Subscriber has full capacity, power and authority to enter into and perform its obligations under this Agreement, and all action necessary to authorize the execution, delivery and performance of this Agreement has been taken or will be taken prior to the Closing. This Agreement constitutes the valid and legally binding obligations of the Subscriber, enforceable in accordance with their respective terms, except as limited by (a) applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, (b) laws relating to the availability of specific performance, injunctive relief or other equitable remedies and (c) state and federal securities laws with respect to rights to indemnification or contribution.

3.10.    There are no limitations or restrictions on the Subscriber's ability to invest in the Company and to perform its obligations under this Agreement.

3.11.    Subscriber understands that the Shares are characterized as "restricted securities" under the federal securities laws inasmuch as they are being acquired from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such securities may be resold without registration under the Act only in certain limited circumstances. In this connection, Subscriber represents that it is familiar with Rule 144 under the Act, as presently in effect, and understands the resale limitations imposed thereby and by the Act.

3.12.    Subscriber is not subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Act (a "**Disqualification Event**"), except for a Disqualification Event covered by Rule 506(d)(2) or (d)(3).

4.    Representations and Warranties of the Company.    The Company represents and warrants to Subscriber as follows:

4.1.    Corporate Status.    The Company is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Delaware. The Company has all requisite corporate power and authority to own or lease, as the case may be, its properties and to carry on its business as now conducted.

4.2.    Corporate Power and Authority.    The Company has the corporate power and authority to execute and deliver this Agreement, to perform its obligations hereunder and consummate the transactions contemplated hereby.    The Company has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby.

4.3.    Enforceability.    This Agreement has been duly executed and delivered by the Company and constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms except as limited by (a) applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, (b) laws relating to the availability of specific performance, injunctive

Common Stock Subscription Agreement

relief or other equitable remedies and (c) state and federal securities laws with respect to rights to indemnification or contribution.

4.4. <u>Shares</u>. The shares are duly authorized, and when paid for pursuant to this Agreement, issued and delivered, shall be validly issued, fully paid and nonassessable.

## 5. Transfer Restrictions.

5.1. <u>General</u>. The Shares may not be offered for sale, sold or transferred except pursuant to (i) an effective registration under the Securities Act or in a transaction which is otherwise in compliance with the Securities Act, (ii) an effective registration under any applicable state securities statute or in a transaction otherwise in compliance with any applicable state securities statute, and (iii) evidence of compliance with the applicable securities laws of other jurisdictions. Subscriber shall furnish to the Company and the Company shall be entitled to rely upon an opinion of competent securities counsel acceptable to the Company with respect to compliance with the above laws, which opinion shall be in form and substance reasonably acceptable to the Company.

5.2. <u>Market Stand-Off</u>. Subscriber hereby agrees that Subscriber shall not sell, dispose of, transfer, make any short sale of, grant any option for the purchase of, or enter into any hedging or similar transaction with the same economic effect as a sale, any Common Stock or other securities of the Company held by Subscriber, including the Shares (the "**Restricted Securities**"), during the 180-day period following the effective date of a registration statement of the Company filed under the Securities Act (the "**Lock Up Period**") (or such longer period, not to exceed eighteen (18) days after the expiration of the 180-day period, as the underwriters or the Company shall request in order to facilitate compliance with NASD Rule 2711). Subscriber agrees to execute and deliver such other agreements as may be reasonably requested by the Company and/or the managing underwriter that are consistent with the foregoing or that are necessary to give further effect thereto. In order to enforce the foregoing covenant, the Company may impose stop-transfer instructions with respect to Subscriber's Restricted Securities until the end of such period. The underwriters of the shares of the Company's stock are intended third party beneficiaries of this <u>Section 5.2</u> and shall have the right, power and authority to enforce the provisions hereof as though they were a party hereto.

## 6. Right of First Refusal.

6.1. <u>Right of First Refusal</u>. In the event that the Subscriber proposes to sell, pledge or otherwise transfer to a third party any Shares, or any interest in such Shares, to any person, entity or organization (the "**Transferee**") the Company shall have the right of first refusal with respect to all (and not less than all) of such Shares (the "**Right of First Refusal**"). If Subscriber desires to transfer Shares acquired under this Agreement, Subscriber shall give a written transfer notice ("**Transfer Notice**") to the Company describing fully the proposed transfer, including the number of Shares proposed to be transferred, the proposed transfer price, the name and address of the proposed Transferee and proof satisfactory to the Company that the proposed sale or transfer will not violate any applicable federal or state securities laws. The Transfer Notice shall constitute a binding commitment of the Subscriber to the transfer of the Shares. The Company shall have the right to purchase all, and not less than all, of the Shares on

the terms of the proposal described in the Transfer Notice by delivery of a notice of exercise of the Right of First Refusal within thirty (30) days after the date when the Transfer Notice was received by the Company. The Company's rights under this Section 6.1 shall be freely assignable by the Company, in whole or in part.

6.2. Exempt Transfers. Notwithstanding anything to the contrary in this Section 6, the following transfers of Shares will be exempt from the Right of First Refusal: (i) the transfer of any or all of the Shares on Subscriber's death by will or intestacy to Subscriber's "Immediate Family" (as defined below) or to a trust for the benefit of Subscriber or Subscriber's Immediate Family or (ii) the transfer of Shares by Subscriber's to its members, partners or shareholders, provided that in each case each transferee or other recipient agrees in a writing satisfactory to the Company that the provisions of this Section 6 will continue to apply to the transferred Shares in the hands of such transferee or other recipient. As used herein, the term "**Immediate Family**" will mean Subscriber's spouse, the lineal descendant or antecedent, brother or sister, of Subscriber or Subscriber's spouse, or the spouse of any lineal descendant or antecedent, brother or sister of Subscriber, or Subscriber's spouse, whether or not any of the above are adopted.

6.3. Additional Shares or Substituted Securities. In the event of the declaration of a stock dividend, the declaration of an extraordinary dividend payable in a form other than stock, a spin-off, a stock split, an adjustment in conversion ratio, a recapitalization or a similar transaction affecting the Company's outstanding securities without receipt of consideration, any new, substituted or additional securities or other property (including money paid other than as an ordinary cash dividend) which are by reason of such transaction distributed with respect to any Shares subject to this Section 6 or into which such Shares thereby become convertible shall immediately be subject to this Section 6. Appropriate adjustments to reflect the distribution of such securities or property shall be made to the number and/or class of the Shares subject to this Section 6.

6.4. Termination of Right of First Refusal. The Right of First Refusal will terminate as to all Shares (i) on the effective date of the first sale of Common Stock of the Company to the general public pursuant to an effective registration statement filed under the Securities Act (other than a registration statement relating solely to the issuance of Common Stock pursuant to a business combination or an employee incentive or benefit plan) or (ii) on any transfer or conversion of Shares made pursuant to a statutory merger or statutory consolidation of the Company with or into another corporation or corporations if the common stock of the surviving corporation or any direct or indirect parent corporation thereof is registered under the Securities Exchange Act of 1934, as amended.

7. Stockholders Agreement. In the event that the Company raises equity capital from a third party who as a condition to making an investment in the Company requests that the Subscriber and other holders of the Company's Common Stock enter into a securityholder agreement, Subscriber hereby agrees to execute and deliver a securityholder agreement in form and substance acceptable to the third party investor.

8. Legends. It is understood that the Shares may bear one or all of the following legends in substantially the following form(s):

Common Stock Subscription Agreement

8.1.    "THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER SUCH ACT OR (B) AN OPINION FROM COUNSEL FOR OVIO TECHNOLOGIES, INC. OR FROM COUNSEL FOR THE PROPOSED TRANSFEROR REASONABLY SATISFACTORY TO OVIO TECHNOLOGIES, INC., TO THE EFFECT THAT THE TRANSFER MAY BE EFFECTED WITHOUT SUCH REGISTRATION."

8.2.    "ANY TRANSFER, ACQUISITION, HYPOTHECATION OR PLEDGE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE, OR THE TRANSFER OF ANY INTEREST IN THOSE SECURITIES, IS RESTRICTED BY THE PROVISIONS OF A SUBSCRIPTION AGREEMENT ENTERED INTO BETWEEN OVIO TECHNOLOGIES, INC. AND THE ORIGINAL PURCHASER OF THE SECURITIES, WHICH AMONG OTHER THINGS LIMITS THE SALE, TRANSFER OR ENCUMBRANCE OF THE SECURITIES. A COPY OF THIS AGREEMENT MAY BE INSPECTED AT THE PRINCIPAL OFFICE OF OVIO TECHNOLOGIES, INC. AND ALL OF THE PROVISIONS OF SAID AGREEMENT ARE INCORPORATED HEREIN. THE AGREEMENT IS AUTOMATICALLY BINDING UPON ANY PERSON WHO ACQUIRES OR IS TRANSFERRED SECURITIES."

8.3.    Any legend required pursuant to any applicable state securities laws.

9.    Miscellaneous/General.

9.1.    Amendment. No modification or amendment hereof shall be valid and binding, unless it be in writing and signed by the parties hereto.

9.2.    Benefit. This Agreement shall inure to the benefit of, and shall be binding upon, Subscriber and the Company, and their successors and assigns.

9.3.    Headings. Section headings are inserted herein for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

9.4.    Governing Law. This Agreement shall be construed in accordance with, and governed by, the laws of the State of Delaware, without reference to the conflict of laws principles thereof.

9.5.    Entire Agreement. This Agreement represents the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and all prior conversations, negotiations, understandings and agreements between the parties hereto concerning the subject matter hereof are hereby expressly superseded.

9.6.    Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall

Common Stock Subscription Agreement

constitute one and the same instrument. Either or all parties may execute this Agreement by facsimile signature or scanned signature in PDF format, and any such facsimile signature or scanned signature, if identified, legible and complete, shall be deemed an original signature and each of the parties is hereby authorized to rely thereon.

[SIGNATURE PAGE FOLLOWS]

Common Stock Subscription Agreement

IN WITNESS WHEREOF, this Common Stock Subscription Agreement was duly executed on June 2 , 2017 .

COMPANY:

**oVio Technologies, Inc.**

By: _Dan Quandt (signature)_

Name: Dan Quandt
Title: CFO

Software Technology Group is an
Oregon base S-Corp.
EIN 93-1101 247

SUBSCRIBER:

_Jay Abramovitz (signature) - Software Technology Group_
Signature

Name Jay Abramovitz, President STG

Address: 4240 SW 109th Ave
Beaverton OR 97005

Phone: 503 672 9245
Fax: 503 350 0620
E-mail: Jay @ SoftwareTechnology.com

No. of Shares that Subscriber desires to purchase:

10,245 Shares (at $ 0.3514 per Share) = $ 3,600.00 (paid in services per Quick Turn Code Cleanup Rev 1.2 dated 3/14/17)

# EXHIBIT B

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 10/30/2017 | 20170185c |

**BILL TO**

Ovio
George Rebensdorf
260 Newport Center Drive
Newport Beach, CA 92660

**SHIP TO**

Ovio
Dan Quandt
260 Newport Center Drive
Newport Beach, CA 92660

**REMIT TO**

Software Technology Group, Inc
4240 SW 109th Avenue
Beaverton, Oregon 97005
(W) 503-672-9245 (FAX) 503-350-0620

| P.O. NO. | TERMS |
|----------|-------|
| | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | API Development<br>Stock incentives to be paid on completion (51.5 hrs * $20/hr = $1030) - Prev invoice<br>Stock incentives to be paid on completion (59.5 hrs * $20/hr = $1190) - Prev invoice<br>Stock incentives to be paid on completion (26.5 hrs * $20/hr = $530) - Prev invoice<br>Completed: Stock incentive $2750 | 0 | 100.00 | 0.00 |
| Contractor Sv | Asset Management<br>Stock incentives to be paid on completion (42.5 hrs * $20/hr = $850) - Present invoice<br>Stock incentives to be paid on completion (121.5 hrs * $20/hr = $2430) - Prev invoice<br>Stock incentives to be paid on completion (80 hrs * $20/hr = $1600) - Prev invoice | 42.5 | 100.00 | 4,250.00 |
| Contractor Sv | Device Setup support<br>Stock incentives to be paid on completion (7.5 hrs * $20/hr = $150) - Prev invoice<br>Completed: Stock incentive $150 | 0 | 100.00 | 0.00 |
| Contractor Sv | MP4 Conversion<br>Stock incentives to be paid on completion (92 hrs * $20/hr = $1840) - Present invoice<br>Stock incentives to be paid on completion (14 hrs * $20/hr = $280) - Prev invoice | 92 | 100.00 | 9,200.00 |
| Contractor Sv | JPEG NPP - New Video Card Integration issues<br>Stock incentives to be paid on completion (91.5 hrs * $20/hr = $1830) - Prev invoice<br>Completed: Stock incentive $1830 | 0 | 100.00 | 0.00 |

**Total**

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 10/30/2017 | 20170185c |

**BILL TO**

Ovio
George Rebensdorf
260 Newport Center Drive
Newport Beach, CA 92660

**SHIP TO**

Ovio
Dan Quandt
260 Newport Center Drive
Newport Beach, CA 92660

**REMIT TO**

Software Technology Group, Inc.
4240 SW 109th Avenue
Beaverton, Oregon 97005
(W) 503-672-9245 (FAX) 503-350-0620

| P.O. NO. | TERMS |
|----------|-------|
|          | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | On-Going support<br>In a verbal agreement with George, October support of the frame dropping is billed solely as stock incentive at $125/hr<br>Stock incentives to be paid on completion (60 hrs * $125/hr = $7500) - Present invoice<br>Stock incentives to be paid on completion (14.5 hrs * $20/hr = $290) - Prev invoice | 60 | 0.00 | 0.00 |
| Contractor Sv | Physical Layer Breakout<br>Stock incentives to be paid on completion (117 hrs * $20/hr = $2540) - Present invoice<br>Stock incentives to be paid on completion (64 hrs * $20/hr = $1280) - Prev invoice | 117 | 100.00 | 11,700.00 |

| Total | | $25,150.00 |
|-------|--|------------|

# Invoice

| DATE | INVOICE NO. |
|---|---|
| 12/7/2017 | 20170204 |

| BILL TO |
|---|
| Ovio<br>George Rebensdorf<br>260 Newport Center Drive<br>Newport Beach, CA 92660 |

| SHIP TO |
|---|
| Ovio<br>Dan Quandt<br>260 Newport Center Drive<br>Newport Beach, CA 92660 |

| REMIT TO |
|---|
| Software Technology Group, Inc<br>4240 SW 109th Avenue<br>Beaverton, Oregon 97005<br>(W) 503-672-9245 (FAX) 503-350-0620 |

| P.O. NO. | TERMS |
|---|---|
|  | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| Contractor Sv | API Development<br>Completed: Stock incentive $2750 | 0 | 100.00 | 0.00 |
| Contractor Sv | Asset Management<br>Stock incentives to be paid on completion (76 hrs * $20/hr = $1520)<br>- Present invoice<br>Stock incentives to be paid on completion (42.5 hrs * $20/hr = $850) - Prev invoice<br>Stock incentives to be paid on completion (121.5 hrs * $20/hr = $2430) - Prev invoice<br>Stock incentives to be paid on completion (80 hrs * $20/hr = $1600) - Prev invoice | 76 | 100.00 | 7,600.00 |
| Contractor Sv | Device Setup support<br>Completed: Stock incentive $150 | 0 | 100.00 | 0.00 |
| Contractor Sv | MP4 Conversion<br>Stock incentives to be paid on completion (24 hrs * $20/hr = $480) - Present invoice<br>Stock incentives to be paid on completion (92 hrs * $20/hr = $1840) - Prev invoice<br>Stock incentives to be paid on completion (14 hrs * $20/hr = $280) - Prev invoice | 24 | 100.00 | 2,400.00 |
| Contractor Sv | JPEG NPP - New Video Card Integration issues<br>Completed: Stock incentive $1830 | 0 | 100.00 | 0.00 |
| Contractor Sv | On-Going support<br>Stock incentives to be paid on completion (20.5 hrs * $20/hr = $410) - Present invoice<br>In a verbal agreement with George, October support of the frame dropping is billed solely as stock incentive at $125/hr | 20.5 | 100.00 | 2,050.00 |

| | Total | |
|---|---|---|

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 12/7/2017 | 20170204 |

**BILL TO**

Ovio
George Rebensdorf
260 Newport Center Drive
Newport Beach, CA 92660

**SHIP TO**

Ovio
Dan Quandt
260 Newport Center Drive
Newport Beach, CA 92660

**REMIT TO**

Software Technology Group, Inc
4240 SW 109th Avenue
Beaverton, Oregon 97005
(W) 503-672-9245 (FAX) 503-350-0620

| P.O. NO. | TERMS |
|----------|-------|
|          | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | Stock incentives to be paid on completion (60 hrs * $125/hr = $7500) - Present invoice<br>Stock incentives to be paid on completion (14.5 hrs * $20/hr = $290) - Prev invoice<br><br>Physical Layer Breakout<br>Stock incentives to be paid on completion (177 hrs * $20/hr = $3540) - Present invoice<br>Stock incentives to be paid on completion (117 hrs * $20/hr = $2340) - Prev invoice<br>Stock incentives to be paid on completion (64 hrs * $20/hr = $1280) - Prev invoice | 177 | 100.00 | 17,700.00 |

| Total | | $29,750.00 |
|-------|--|-----------|

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 12/30/2017 | 20170218 |

| BILL TO |
|---------|
| Ovio<br>George Rebensdorf<br>260 Newport Center Drive<br>Newport Beach, CA 92660 |

| SHIP TO |
|---------|
| Ovio<br>Dan Quandt<br>260 Newport Center Drive<br>Newport Beach, CA 92660 |

| REMIT TO |
|----------|
| Software Technology Group, Inc<br>4240 SW 109th Avenue<br>Beaverton, Oregon 97005<br>(W) 503-672-9245 (FAX) 503-350-0620 |

| P.O. NO. | TERMS |
|----------|-------|
|  | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | API Development<br>Completed: Stock incentive $2750 | 0 | 100.00 | 0.00 |
| Contractor Sv | Asset Management<br>Stock incentives to be paid on completion (21 hrs * $20/hr = $420) - Present invoice<br>Stock incentives to be paid on completion (76 hrs * $20/hr = $1520) - Prev invoice<br>Stock incentives to be paid on completion (42.5 hrs * $20/hr = $850) - Prev invoice<br>Stock incentives to be paid on completion (121.5 hrs * $20/hr = $2430) - Prev invoice<br>Stock incentives to be paid on completion (80 hrs * $20/hr = $1600) - Prev invoice | 21 | 100.00 | 2,100.00 |
| Contractor Sv | Device Setup support<br>Completed: Stock incentive $150 | 0 | 100.00 | 0.00 |
| Contractor Sv | MP4 Conversion<br>Stock incentives to be paid on completion (24 hrs * $20/hr = $480) - Prev invoice<br>Stock incentives to be paid on completion (92 hrs * $20/hr = $1840) - Prev invoice<br>Stock incentives to be paid on completion (14 hrs * $20/hr = $280) - Prev invoice | 0 | 100.00 | 0.00 |
| Contractor Sv | JPEG NPP - New Video Card Integration issues<br>Completed: Stock incentive $1830 | 0 | 100.00 | 0.00 |
| Contractor Sv | On-Going support<br>Stock incentives to be paid on completion (20.5 hrs * $20/hr = $410) - Prev invoice | 0 | 100.00 | 0.00 |

| Total |
|-------|

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 12/30/2017 | 20170218 |

**BILL TO**

Ovio
George Rebensdorf
260 Newport Center Drive
Newport Beach, CA 92660

**SHIP TO**

Ovio
Dan Quandt
260 Newport Center Drive
Newport Beach, CA 92660

**REMIT TO**

Software Technology Group, Inc
4240 SW 109th Avenue
Beaverton, Oregon 97005
(W) 503-672-9245 (FAX) 503-350-0620

| P.O. NO. | TERMS |
|----------|-------|
| | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | In a verbal agreement with George, October support of the frame dropping is billed solely as stock incentive at $125/hr<br>Stock incentives to be paid on completion (60 hrs * $125/hr = $7500) - Prev invoice<br>Stock incentives to be paid on completion (14.5 hrs * $20/hr = $290) - Prev invoice<br><br>Physical Layer Breakout<br>Stock incentives to be paid on completion (34 hrs * $20/hr = $680) - Present invoice<br>Stock incentives to be paid on completion (177 hrs * $20/hr = $3540) - Prev invoice<br>Stock incentives to be paid on completion (117 hrs * $20/hr = $2340) - Prev invoice<br>Stock incentives to be paid on completion (64 hrs * $20/hr = $1280) - Prev invoice | 34 | 100.00 | 3,400.00 |

| | **Total** | $5,500.00 |
|--|-----------|-----------|

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 2/1/2018 | 20180009 |

| BILL TO |
|---------|
| Ovio |
| Dan Quandt |
| 260 Newport Center Drive |
| Newport Beach, CA 92660 |

| SHIP TO |
|---------|
| Ovio |
| Dan Quandt |
| 260 Newport Center Drive |
| Newport Beach, CA 92660 |

| REMIT TO |
|----------|
| Software Technology Group, Inc |
| 4240 SW 109th Avenue |
| Beaverton, Oregon 97005 |
| (W) 503-672-9245 (FAX) 503-350-0620 |

| P.O. NO. | TERMS |
|----------|-------|
|  | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | API Development<br>Completed: Stock incentive $2750 | 0 | 100.00 | 0.00 |
| Contractor Sv | Asset Management<br>Stock incentives to be paid on completion (106.5 hrs * $20/hr = $2130) - Present invoice<br>Stock incentives to be paid on completion (21 hrs * $20/hr = $420) - Prev invoice<br>Stock incentives to be paid on completion (76 hrs * $20/hr = $1520) - Prev invoice<br>Stock incentives to be paid on completion (42.5 hrs * $20/hr = $850) - Prev invoice<br>Stock incentives to be paid on completion (121.5 hrs * $20/hr = $2430) - Prev invoice<br>Stock incentives to be paid on completion (80 hrs * $20/hr = $1600) - Prev invoice | 106.5 | 100.00 | 10,650.00 |
| Contractor Sv | Device Setup support<br>Completed: Stock incentive $150 | 0 | 100.00 | 0.00 |
| Contractor Sv | MP4 Conversion<br>Stock incentives to be paid on completion (24 hrs * $20/hr = $480) - Prev invoice<br>Stock incentives to be paid on completion (92 hrs * $20/hr = $1840) - Prev invoice<br>Stock incentives to be paid on completion (14 hrs * $20/hr = $280) - Prev invoice | 0 | 100.00 | 0.00 |
| Contractor Sv | JPEG NPP - New Video Card Integration issues<br>Completed: Stock incentive $1830 | 0 | 100.00 | 0.00 |
| Contractor Sv | On-Going support | 0 | 100.00 | 0.00 |

**Total**

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 2/1/2018 | 20180009 |

**BILL TO**

Ovio
Dan Quandt
260 Newport Center Drive
Newport Beach, CA 92660

**SHIP TO**

Ovio
Dan Quandt
260 Newport Center Drive
Newport Beach, CA 92660

**REMIT TO**

Software Technology Group, Inc
4240 SW 109th Avenue
Beaverton, Oregon 97005
(W) 503-672-9245 (FAX) 503-350-0620

| P.O. NO. | TERMS |
|----------|-------|
| | Net 10 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Contractor Sv | Stock incentives to be paid on completion (20.5 hrs * $20/hr = $410) - Prev invoice<br>In a verbal agreement with George, October support of the frame dropping is billed solely as stock incentive at $125/hr<br>Stock incentives to be paid on completion (60 hrs * $125/hr = $7500) - Prev invoice<br>Stock incentives to be paid on completion (14.5 hrs * $20/hr = $290) - Prev invoice<br><br>Physical Layer Breakout<br>Stock incentives to be paid on completion (4.5 hrs * $20/hr = $90) - Present invoice<br>Stock incentives to be paid on completion (34 hrs * $20/hr = $680) - Prev invoice<br>Stock incentives to be paid on completion (177 hrs * $20/hr = $3540) - Prev invoice<br>Stock incentives to be paid on completion (117 hrs * $20/hr = $2340) - Prev invoice<br>Stock incentives to be paid on completion (64 hrs * $20/hr = $1280) - Prev invoice | 4.5 | 100.00 | 450.00 |

| | Total | $11,100.00 |
|--|-------|------------|